1

2

3

4

```
 ___ X FILED        ___ LODGED
 ___ RECEIVED       ___ COPY

        JUN 1 5 2010

   CLERK U S DISTRICT COURT
     DISTRICT OF ARIZONA
 BY _____ DEPUTY
```

5

6

*REDACTED FOR PUBLIC DISCLOSURE*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

7

8

9   United States of America,

10              Plaintiff,

                v.

11  1. THOMAS GREGORY ALEXANDER,
       Counts 1-57,

12

13  2. KARA ELIZABETH SHUMWAY,
       a.k.a., Kara Edwards,
       Counts 1-32 and 33-40,

14

15  3. PAUL PATRICK ALEXANDER,
       Counts 1-32 and 33-40,

16  4. SANDRA M. STEVENS,
       Counts 1-32 and 46-51,

17

18  5. BOBBIE JO JOHNSON,
       Counts 1-32 and 41-45,

19

20  6. MICHAEL S. MASON,
       Counts 1-19 and 52-56,

21  7. MICHAEL JOSEPH HARRIS,
       Count 57,

22

             Defendants.

**CR 10 07 9 7 PHX MHM DKD**

**I N D I C T M E N T**

VIO:  18 U.S.C. § 371
      (Conspiracy)
      Count 1

      18 U.S.C. § 1343 and 2
      (Wire Fraud and
      Aiding & Abetting)
      Counts 2 - 19

      18 U.S.C. § 1957(a) and 2
      (Transactional Money Laundering
      and Aiding & Abetting)
      Counts 20 - 32

      18 U.S.C. § 1014 and 2
      (False Statements)
      Counts 33 - 57

      18 U.S.C. § 981
      18 U.S.C. § 982
      28 U.S.C. § 2461(c)
      (Forfeiture Allegations)

23

THE GRAND JURY CHARGES:

24

At all times material to this Indictment:

25

26

## INTRODUCTION

1.   Mesa Bank was a federally insured lending institution that was based in Arizona.

27

Mesa Bank was a subsidiary of Capital Bancorp in Michigan.  In December 2009, Mesa

28

1 Bank changed its name to Sunrise Bank of Arizona.

2 2.    Starting in at least 2005, Mesa Bank provided short-term construction loans to qualified

3 borrowers.  The construction loans generally covered the costs of acquiring a lot for the

4 home, as well as, the construction costs for the home.

5 3.    Mesa Bank issued construction loans based on information provided by borrowers, such

6 as their income, assets, credit rating, and down payment amount.  In order to get a loan, Mesa

7 Bank required borrowers to provide a significant down payment, of approximately 5 to 10%

8 of the total loan amount.  Mesa Bank would not have issued a construction loan if the

9 borrower did not provide a significant down payment at the time of closing.

10 4.    The amount of the construction loan was generally based upon the sales price of the lot

11 and the construction costs for the custom home.  Mesa Bank required that a real estate

12 appraisal be conducted that would value the lot with the completed home.  Mesa Bank relied

13 upon the real estate appraisal to determine whether to lend a certain amount of money to a

14 borrower.

15 5.    Sometime in the fall of 2005, Mesa Bank required escrow companies to submit evidence

16 that the borrower provided a down payment at the time of closing.  To fulfill this

17 requirement, escrow agents at Capital Title Agency would submit a copy of the borrower's

18 down payment check to Mesa Bank, as well as a HUD-1 Settlement Statement.

19 **DEFENDANTS**

20 6.      THOMAS GREGORY ALEXANDER (hereinafter "T.ALEXANDER"), was a

21 resident of Scottsdale, Arizona.  T.ALEXANDER worked as a loan originator for American

22 Mortgage Specialists and owned and operated a company called Sea Rock, L.L.C..

23 T.ALEXANDER also became associated with another business entity identified as World

24 Wide Properties (hereinafter "WWP").  As described below, T.ALEXANDER devised a loan

25 origination scheme where he assisted third-party borrowers (hereinafter "borrowers") to

26 qualify for loans from Mesa Bank by creating loan documents that misrepresented the

27 borrower's income, assets, credit score, and down payment amount.  In some cases,

28                                                  2

1    T.ALEXANDER assisted borrowers to qualify for loans used to purchase undeveloped lots
2    he owned through Sea Rock.  T.ALEXANDER used either SANDRA M. STEVENS or
3    BOBBI JO JOHNSON, Capital Title Agency escrow agents, to handle the loans he
4    originated.
5    7.    KARA ELIZABETH SHUMWAY, a.k.a. Kara Edwards, (hereinafter
6    "SHUMWAY"), was a resident of Mesa, Arizona.  SHUMWAY worked for American
7    Mortgage Funding as a loan processor and was supervised by T.ALEXANDER.
8    SHUMWAY assisted T.ALEXANDER by creating documents which misrepresented or
9    overstated the income earned by the borrowers.
10   8.    PAUL PATRICK ALEXANDER (hereinafter "P.ALEXANDER"), was a resident of
11   Scottsdale, Arizona.  P.ALEXANDER worked for American Mortgage Funding as a loan
12   processor and was supervised by T.ALEXANDER.  P.ALEXANDER assisted
13   T.ALEXANDER by creating documents which misrepresented the income earned by the
14   borrowers.
15   9.    SANDRA M. STEVENS (hereinafter "STEVENS"), was a resident of Chandler,
16   Arizona, and worked as a branch manager and escrow officer for Capital Title Agency.
17   STEVENS furthered T.ALEXANDER's loan origination scheme by creating, and submitting
18   to the bank, an escrow receipt which reflected that the borrower's down payment had been
19   deposited into escrow and applied to the purchase.  In most cases, the borrowers' down
20   payments were never deposited into escrow.
21   10.   BOBBIE JO JOHNSON (hereinafter "JOHNSON"), was a resident of
22   Scottsdale, Arizona who worked as an escrow officer at Capital Title Agency and handled
23   some of the loans originated by T.ALEXANDER.  JOHNSON also furthered
24   T.ALEXANDER's loan origination scheme by creating, and submitting to the bank, an
25   escrow receipt which reflected that the borrower's down payment had been deposited into
26   escrow and applied to the purchase.  Again, in most cases, the borrowers' down payments
27   were never deposited into escrow.
28                                                    3

11.     MICHAEL S. MASON (hereinafter "MASON") was a resident of Mesa, Arizona. MASON worked as a real estate appraiser under Mason Appraisal Services or Mason Appraisal, L.L.C.. At the direction of T.ALEXANDER, MASON created real estate appraisals which, in most cases, overvalued the real estate purchased by the borrowers.

12.     MICHAEL JOSEPH HARRIS (hereinafter "HARRIS"), was a resident of Phoenix, Arizona. HARRIS worked as a real estate agent and purchased several lots owned by T.ALEXANDER.

## RELEVANT ENTITIES

13.     Sea Rock, L.L.C., (hereinafter "Sea Rock") was an Arizona limited liability company that was formed on or about July 26, 2006. Sea Rock was used to facilitate the sale of real estate. T.ALEXANDER owned and operated Sea Rock.

14.     World Wide Properties was a business entity in Arizona that was used by T.Alexander.   WWP received some of the loan proceeds from the sale of undeveloped lots owned and controlled by T.ALEXANDER.

15.     Mason Appraisal Services was a business entity that was formed in 2004 by MASON.

16.     Mason Appraisal, L.L.C., was an Arizona limited liability company that was formed on or about October 24, 2007. MASON was a member of Mason Appraisal, L.L.C..

17.     American Mortgage Funding was an Arizona corporation that was formed on or about January 3, 2005.

18.     Capital Title Agency was a corporation that provided escrow and loan closing services.

**COUNT ONE**
**CONSPIRACY TO COMMIT WIRE FRAUD**
**AND**
**FALSE STATEMENTS**

**(18 U.S.C. § 371)**

19.     The factual allegations in paragraphs 1 through 18 of this Indictment are incorporated by reference and re-alleged as though fully set forth herein.

4

20.     Beginning at a time unknown to the Grand Jury, but by at least as early as in or about August, 2005, and continuing to a date unknown to the Grand Jury, but through at least in or around May, 2007, in the District of Arizona and elsewhere, defendants T.ALEXANDER, P.ALEXANDER, SHUMWAY, STEVENS, JOHNSON, and MASON, individually or doing business under the entities described above, along with other individuals and entities known and unknown to the Grand Jury, did knowingly and willfully agree and conspire with each other to commit violations of the following offenses against the United States:

a. To knowingly devise and participate in, and execute a scheme to defraud a lending institution, and to obtain money and property from the lending institution through the use of false and fraudulent pretenses, representations and promises, and concealment of material facts, and by causing the transmission of funds, through interstate commerce, by means of wire, radio and television communications, in violation of Title 18, United States Code, Section 1343 (Wire Fraud).

b. To knowingly make and cause to be made materially false statements for the purpose of influencing a lending institution, whose accounts were insured by the Federal Deposit Insurance Corporation, to loan money in violation of Title 18, United States Code, Section 1014 (False Statements).

## SCHEME TO DEFRAUD

21.     T.ALEXANDER, P.ALEXANDER and SHUMWAY, assisted borrowers to qualify for construction loans from Mesa Bank by creating and submitting documents that misrepresented the borrower's income, assets, credit score, and down payment amount.   In some cases, T.ALEXANDER, and others, assisted the borrowers in qualifying for loans that were used to purchase undeveloped lots owned by T.ALEXANDER.   Most, if not all, of the real estate purchased by the borrowers was overvalued.  These inflated valuations were supported by real estate appraisals created by MASON at the direction of T.ALEXANDER.  STEVENS and JOHNSON furthered the scheme by submitting documents to Mesa Bank which falsely represented that the borrower had provided a down payment which had been applied to the

1    purchase of the lot.

2

3                **OBJECT OF THE CONSPIRACY AND SCHEME TO DEFRAUD**

4    22.    The object of the conspiracy and scheme to defraud, as devised and executed by the

5    defendants and others, individually and through the various entities described above, was for

6    the defendants to enrich themselves with the fees and commissions they received from each

7    real estate transaction, and by other means, to the detriment of Mesa Bank.

8                **THE MANNER AND MEANS OF THE CONSPIRACY**

9    23.    The manner and means used by the defendants, and others, either individually or

10   through the entities described above, to achieve the objects of the conspiracy and the

11   schemes and artifices to defraud, included the following:

12        a.        The defendant, T.ALEXANDER, acted as a loan originator for American

13                  Mortgage Funding, and assisted borrowers in qualifying for construction loans

14                  from Mesa Bank.  These loans were used for the acquisition of various parcels

15                  of land, and then for the construction of custom homes on those parcels of land.

16        b.        In many cases, T.ALEXANDER directed the third-party borrowers to sign

17                  blank Uniform Residential Loan Applications and provide their bank account

18                  information.  As part of the conspiracy, T.ALEXANDER, SHUMWAY, and

19                  P.ALEXANDER, would then alter or create Verification of Deposit documents

20                  which falsely overstated the amount of money in the borrowers' bank accounts.

21        c.        As part of the conspiracy, T.ALEXANDER, and others acting at his direction,

22                  sometimes altered a borrower's credit report so that the report falsely

23                  represented a higher credit score.

24        d.        As part of the conspiracy, T.ALEXANDER, and others acting at his direction,

25                  would complete the blank Uniform Residential Loan Applications by making

26                  one or more of the following misrepresentations: 1) overstating the borrower's

27                  monthly income; 2) overstating the amount of money in the borrower's bank

28                                                    6

accounts; 3) falsely representing that the borrower would make a down payment at closing; and 4) misrepresenting the intent of the borrower to use the property as a primary residence. T.ALEXANDER would then submit or cause to be submitted the loan application, verification of deposit, credit scores, and other documents, to Mesa Bank for its review and possible approval.

e. STEVENS or JOHNSON would act as the escrow officers for the loans originated by T.ALEXANDER. STEVENS and JOHNSON furthered the purpose and object of the conspiracy and scheme by providing documents to the bank which falsely represented that the borrower's down payment had been deposited and applied to the purchase of the lot. In nearly every case, the borrowers' down payment check was never deposited into escrow.

f. As part of the conspiracy, MASON, at the direction of T.ALEXANDER, created real estate appraisals which overvalued the lots purchased by the borrowers.

g. Mesa Bank approved loans to the borrowers based upon the representations contained in the loan applications, Verification of Deposits, wage and bank account statements, credit reports, appraisals and down payment receipts. After approving a loan, Mesa Bank issued funds, interstate through FedWire, to Capital Title's bank accounts.

h. Between August, 2005, and June, 2007, T.ALEXANDER, and his co-conspirators assisted borrowers in qualifying for loans from Mesa Bank for over 30 lots. Some of the lots included the following:

XX11 N. 91st Street (Parcel #219-24-161)

XX64 N.92nd Street (Lot 5, Parcel #219-33-011E)

XX40 N. 91st Street (Lot 3, Parcel #219-33-011E)

XX17 N. 81st Street (Lot 2A, Parcel #219-21-013)

XX09 N. 81st Street (Lot 2B, Parcel #219-21-013)

7

1      Lot 2, Parcel #219-36-002V

2      XXX08 N. 139th Way (Lot 1, Parcel #219-36-002V)

3      XX49 North 91st Place (Lot 4, Parcel #219-33-011E)

4      XX95 S. Via De Rico (Lot 3, Parcel #104-10-009M)

5      XX77 South Via De Rico (Lot 4, Parcel $104-10-009M)

6      XXX15 S. 195th Street (Lot 24, Parcel #304-90-652)

7      XXX68 East Orion Way (Lot 88, Parcel #304-91-554)

8      XXX10 North 140th Pl. (Parcel 2, Parcel #219-36-109B)

9      XXX87 East Stacey Road (Lot 124, Parcel #304-92-177)

10     XXX12 East Red Bird Road (Parcel 2, Parcel #219-37-421C)

11     XXX17 E. Country Meadows Dr. (Lot 14, Parcel #304-90-674)

12     XXX50 South 195th Street (Lot 6, Parcel #304-90-634)

13     XX43 N. 82nd Street (Parcel 2, Parcel #219-23-005L)

14     XXX24 N. 139th Way, Scottsdale, Arizona

15     XX15 N. 91st Place, Mesa, Arizona

16     XX16 N. 91st Place, Mesa, Arizona

17     XX18 N. 91st Place, Mesa, Arizona

18     XX99 S. Via De Rico, Gold Canyon, Arizona

19     XX58 S. Via De Rico, Gold Canyon, Arizona

20     XXX20 E. Red Bird Rd., Scottsdale, Arizona

21     XX24 N. 81st Street, Mesa, Arizona

22     XX31 N. 81st Street, Mesa, Arizona

23     XX16 N. 82nd Street, Mesa, Arizona

24     XX23 N. 82nd Street, Mesa, Arizona

25     XX42 N. 82nd Street, Mesa, Arizona

26     XX43 N. 82nd Street, Mesa, Arizona

27

28
                                        8

1

## OVERT ACTS

2    24.    In furtherance of the aforesaid conspiracy, and to achieve the objects of the

3    conspiracy, the defendants, and others known and unknown, through the entities described

4    above, committed or caused to be committed, the following overt acts in the District of

5    Arizona and elsewhere:

6
                              **XX11 N. 91st St.**
                              **Mesa, Arizona**
7                             **(Parcel #219-24-161)**

8    a.         On or about August 9, 2005, T.ALEXANDER created, or caused to be created,

9               a Verification of Deposit for G. and C. Bevans.  The Verification of Deposit

10              falsely represented that G. and C. Bevans had $135,467.00 in their Bank of

11              America checking account.

12   b.         In or around August, 2005, T.ALEXANDER created, or caused to be created, a

13              Uniform Residential Loan Application (hereinafter "URLA") for the lot

14              identified as Parcel #219-24-161 (now identified as XX11 N. 91st St.).  The

15              URLA falsely represented that G. and C. Bevans had $135,467.00 in their bank

16              account, and was submitted to Mesa Bank.

17
                              **XX64 N. 92nd Street**
                              **Mesa, Arizona**
18                            **(Lot 5, Parcel #219-33-011E)**

19   c.         On or about January 25, 2006, JOHNSON created, or caused to be created,

20              escrow receipt #1032295 for M. and B. Dana's check #1306, which was

21              payable to Capital Title Agency in the Amount of $126,013.44.  Check #5334

22              was supposed to be deposited into escrow as the down payment for the

23              purchase of Lot 5, Parcel #219-33-011E (now identified as XX64 N.92nd

24              Street).

25   d.         Escrow receipt #1032295 was submitted to Mesa Bank on or about January 25,

26              2006, falsely evidencing that M. and B. Dana made a down payment at closing

27              that was deposited into escrow.

28

**XX40 N. 91st Street**
**Mesa, Arizona**
**(Lot 3, Parcel #219-33-011E)**

e.     In or around January, 2006, T.ALEXANDER created, or caused to be created, a URLA for the lot identified as Lot 3, Parcel #219-33-011E (now identified as XX40 N. 91st Street). The URLA represented that L. and D. Tawzer would provide a down payment of $125,593.27 for the purchase of the lot.

f.     On or about January 26, 2006, JOHNSON created, or caused to be created, escrow receipt #1032291 for L. and D. Tawzer's check #127, which was payable to Capital Title Agency in the amount of $125,431.71. Check #127 was supposed to be deposited into escrow for the purchase of Lot 3, Parcel # 219-33-011E.

g.     Escrow receipt #1032291 was submitted to Mesa Bank on or about January 26, 2006, falsely evidencing that L. and D. Tawzer made a down payment at closing that was deposited into escrow.

**XX17 N. 81st Street**
**Mesa, Arizona**
**(Lot 2A, Parcel #219-21-013)**

h.     On or about May 12, 2006, T.ALEXANDER created, or caused to be created, a Verification of Deposit for K. and J. Moore. The Verification of Deposit falsely represented that K. and J. Moore had $99,680.98 in their State Farm Federal Credit Union account.

I.     In or around May, 2006, T.ALEXANDER created, or caused to be created, a URLA for Lot 2A, Parcel #219-21-013 (now identified as XX17 N. 81st Street). The URLA falsely represented that K. and J. Moore's Pittsburgh residence was valued at approximately $600,000, and that they had $99,680.98 in their State Farm Federal Credit Union account. The URLA was submitted to Mesa Bank.

j.     On or about May 23, 2006, JOHNSON created, or caused to be created, escrow receipt #1036921 for K. and J. Moore's check #7682, which was payable to

10

1    Capital Title Agency in the Amount of $118,858.23.  Check #7682 was

2    supposed to be deposited into escrow for the purchase of the Lot 2A, Parcel #

3    219-21-013.

4    k.    Escrow receipt #1036921 was submitted to Mesa Bank on or about May 23,

5    2006, falsely evidencing that K. and J. Moore made a down payment at closing

6    that was deposited into escrow.

7    **XX09 N. 81st Street**
     **Mesa, Arizona**
8    **(Lot 2B, Parcel #219-21-013)**

9    l.    On or about May 24, 2006, JOHNSON created, or caused to be created, escrow

10   receipt #1036922 for  STEVEN's check #3616, which was payable to Capital

11   Title Agency in the Amount of $119,981.37.  Check #3616 was supposed to be

12   deposited into escrow for the purchase of Lot 2B, Parcel #219-21-013 (now

13   identified as XX09 N. 81st Street).

14   m.    Escrow receipt #1036922 was submitted to Mesa Bank on or about May 24,

15   2006, falsely evidencing that STEVENS made a down payment that was

16   deposited into escrow.

17   **Lot 2, Parcel #219-36-002V**
     **Corner of 139th Street and Villa Cassandra**
18

19   n.    In or around August, 2006, T.ALEXANDER, through Sea Rock, obtained

20   ownership of Lot 2, Parcel #219-36-002V (now identified as Parcel #219-36-

21   186).

22   o.    On or about August 1, 2006, T.ALEXANDER created, or caused to be created,

23   a Verification of Deposit for P.ALEXANDER and his spouse.  The

24   Verification of Deposit falsely represented that P.ALEXANDER and his

25   spouse had $143,657.84 in his Desert Schools Federal Credit Union checking

26   and savings accounts.

27   p.    On or about August 7, 2006, MASON appraised Lot 2, Parcel #219-36-002V,

28   11

1      and concluded that it would be valued at approximately 1.3 million dollars with

2      a completed home.

3   q.   In or around August, 2006, T.ALEXANDER created, or caused to be created, a

4      URLA for the lot identified as Parcel 219-36-186.  The URLA falsely

5      represented that P.ALEXANDER and his spouse earned $13,875.00 per month,

6      had $143,655.00 in their bank accounts, and would provide a $109,884.00

7      down payment.  This URLA was submitted to Mesa Bank.

8   r.   On or about August 25, 2006, STEVENS created, or caused to be created,

9      escrow receipt #1040197 for P.ALEXANDER and his spouse's check #1027,

10     which was payable to Capital Title Agency in the amount of $109,645.52.

11     Check #1027 was supposed to be deposited into escrow as the down payment

12     for the purchase of Lot 2, Parcel#219-36-002V.

13  s.   Escrow receipt #1040197 was submitted to Mesa Bank on or about August 25,

14     2006, falsely evidencing that P.ALEXANDER and his spouse made a down

15     payment at closing that was deposited into escrow.

16  t.   STEVENS submitted a letter to Mesa Bank, on or about January 25, 2006,

17     falsely representing that: 1) All closing conditions/requirements have been met;

18     and 2) All funds and documents needed for closing are in Capital Title

19     Agency's possession.

**XXX08 N. 139th Way**
**Scottsdale, Arizona**
**(Lot 1, Parcel #219-36-002V)**

22  u.   In or around August, 2006, T.ALEXANDER, through Sea Rock, obtained

23     ownership of Lot 1, Parcel #219-36-002V (now identified as XXX08 N. 139th

24     Way, Scottsdale, Arizona).

25  v.   On or about August 2, 2006, T.ALEXANDER created, or caused to be created,

26     a Verification of Deposit for SHUMWAY.  The Verification of Deposit falsely

27     represented that SHUMWAY had $144,638.48 in her Bank of America

28                                      12

1    checking and savings accounts.

2    w.    In or around August, 2006, T.ALEXANDER created, or caused to be created, a

3          URLA for Lot 1, Parcel #219-36-002V.  The URLA falsely represented that

4          SHUMWAY earned $14,083.00 per month, had $144,637.00 in her bank

5          account, and would provide a $105,737.35 down payment.  This URLA was

6          submitted to Mesa Bank.

7    x.    STEVENS submitted a letter to Mesa Bank, on or about August 28, 2006,

8          falsely representing that 1) All closing conditions/requirements have been met

9          and  2) All funds and documents needed for closing are in Capital Title

10         Agency's possession.

11
                          **XX49 North 91st Place**
12                              **Mesa, Arizona**
                          **(Lot 4, Parcel #219-33-011E)**
13
14   y.    In or around September, 2006, T.ALEXANDER used a Verification of Deposit

15         that was submitted by HARRIS.  HARRIS created the Verification of Deposit

16         which falsely represented that he had a total of $563,977.95 in two JP Morgan

17         Chase bank accounts.

18   z.    On or about September 7, 2006, JOHNSON created, or caused to be created,

19         escrow receipt #1040584 for HARRIS' check #2533, which was payable to

20         Capital Title Agency in the Amount of $156,654.93.  Check #2533 was

21         supposed to be deposited into escrow for the purchase of Lot 4, Parcel #219-

22         33-011E (now identified as XX49 North 91st Place).

23   aa.   Escrow receipt #1040584 was submitted to Mesa Bank on or about September

24         7, 2006, falsely evidencing that HARRIS made a down payment at closing that

25         was deposited into escrow.

26   bb.   STEVENS submitted a letter to Mesa Bank, on or about September 7, 2006,

27         falsely representing that 1) All closing conditions/requirements have been met

28
                                       13

1   and  2) All funds and documents needed for closing are in Capital Title

2   Agency's possession.

3   **XX05 S. Via De Rico**
    **Gold Canyon, Arizona**
4   **(Lot 3, Parcel #104-10-009M)**

5   cc.   On or about September 27, 2006, T.ALEXANDER created, or caused to be

6   created, a Verification of Deposit for L. and V. Hunter.  The Verification of

7   Deposit falsely represented that L. and V. Hunter had $112,311.08 in a JP

8   Morgan Bank savings account.

9   dd.   In or around September, 2006, T.ALEXANDER created, or caused to be

10   created, a URLA for Lot 3, Parcel #104-10-009M (now identified as XX05 S.

11   Via De Rico, Gold Canyon, Arizona).  The URLA falsely represented that L.

12   and V. Hunter earned $12,523.00 per month, had $112,311.00 in their bank

13   accounts, and would provide a $90,810.33 down payment.  This URLA was

14   submitted to Mesa Bank.

15   ee.   On or about October 20, 2006, STEVENS created, or caused to be created,

16   escrow receipt #1041947 for L. and V. Hunter's check #1627, which was

17   payable to Capital Title Agency in the amount of $90,112.61.  Check #1627

18   was supposed to be deposited into escrow for the purchase of Lot 3, Parcel

19   #104-10-009M.

20   ff.   Escrow receipt #1041947 was submitted to Mesa Bank on or about October 20,

21   2006, falsely evidencing that L. and V. Hunter made a down payment at

22   closing that was deposited into escrow.

23   gg.   STEVENS submitted a letter to Mesa Bank, on or about October 20, 2006,

24   falsely representing that: 1) All closing conditions/requirements have been met;

25   and  2) All funds and documents needed for closing are in Capital Title

26   Agency's possession.

27

28                                      14

**XX77 South Via De Rico**
**Gold Canyon, Arizona**
**(Lot 4, Parcel #104-10-009M)**

hh.    On or about October 12, 2006, T.ALEXANDER created, or caused to be created, a Verification of Deposit for D. and S. Hunter. The Verification of Deposit falsely represented that D. and S. Hunter had $47,509.76 in a Desert Schools Federal Credit Union account.

ii.    On or about October 13, 2006, T.ALEXANDER created, or caused to be created, a Verification of Deposit for D. and S. Hunter. The Verification of Deposit falsely represented that D. and S. Hunter had $160,815.71 in two JP Morgan Chase Bank accounts.

jj.    In or around October, 2006, T.ALEXANDER created, or caused to be created, a URLA for Lot 4, Parcel #104-10-009M (now identified as XX77 South Via De Rico, Gold Canyon, Arizona). The URLA falsely represented that D. and S. Hunter earned $12,860.94 per month, and had $142,912.00 in their bank accounts. This URLA was submitted to Mesa Bank.

kk.    On or about October 20, 2006, STEVENS created, or caused to be created, the Escrow Receipt #1041948 for D. and S. Hunter's check #1043, which was payable to Capital Title Agency in the Amount of $105,721.66. Check #1043 was supposed to be deposited into escrow for the purchase of the Lot 4, Parcel #104-10-009M.

ll.    Escrow Receipt #1041948 was submitted to Mesa Bank on or about October 20, 2006, falsely evidencing that D. and S. Hunter made a down payment at closing that was deposited into escrow.

mm.    STEVENS submitted a letter to Mesa Bank, on or about October 20, 2006, falsely representing that: 1) All closing conditions/requirements have been met; and 2) All funds and documents needed for closing are in Capital Title Agency's possession.

15

**XXX15 S. 195th Street**
**Queen Creek, Arizona**
**(Lot 24, Parcel #304-90-652)**

nn.     In or around October, 2006, T.ALEXANDER, through Sea Rock, obtained ownership of Lot 24, Parcel #304-90-652 (Now identified as XXX15 S. 195th Street, Queen Creek, Arizona).

oo.     On or about October 17, 2006, MASON appraised Lot 24, Parcel #304-90-652, and concluded that it would be valued at approximately 1.3 million dollars with a completed home.

pp.     On or about October 20, 2006, T.ALEXANDER created, or caused to be created, a Verification of Deposit for J. and C. Bodrero. The Verification of Deposit falsely represented that J. and C. Bodrero had $183,434.36 in their Wells Fargo Bank checking and savings accounts.

qq.     In or around November, 2006, T.ALEXANDER created, or caused to be created, a URLA for Lot 24, Parcel #304-90-652. The URLA falsely represented that J. Bodrero earned $15,255.00 per month, had $183,433.00 in his bank accounts, and would provide a $96,342.88 down payment. This URLA was submitted to Mesa Bank.

rr.     On or about November 7, 2006, STEVENS created, or caused to be created, the escrow receipt #1042642 for J. And C. Bodrero's check #187, which was payable to Capital Title Agency in the Amount of $110,817.29. Check #187 was supposed to be deposited into escrow as the down payment for the purchase of Lot 24, Parcel #304-90-652.

ss.     Escrow receipt #1042642 was submitted to Mesa Bank on or about November 7, 2006, falsely evidencing that J. and C. Bodrero made a down payment at closing that was deposited into escrow.

tt.     STEVENS submitted a letter to Mesa Bank, on or about November 7, 2006, falsely representing that: 1) All closing conditions/requirements have been met;

16

and  2) All funds and documents needed for closing are in Capital Title Agency's possession.

**XXX68 East Orion Way**
**Queen Creek, Arizona**
**(Lot 88, Parcel #304-91-554)**

uu.   In or around October, 2006, T.ALEXANDER, through Sea Rock, obtained ownership of Lot 88, Parcel #304-91-554 (now identified as XXX68 East Orion Way, Queen Creek, Arizona).

vv.   On or about October 17, 2006, MASON appraised Lot 88, Parcel #304-91-554, and valued the property at approximately 1.3 million dollars with a completed home.

ww.   On or about October 24, 2006, T.ALEXANDER created, or caused to be created, a Verification of Deposit for A.Gustavson.  The Verification of Deposit falsely represented that A.Gustavson had $121,202.71 in her Bank of America checking account.

xx.   In or around November, 2006, T.ALEXANDER created, or caused to be created, a URLA for Lot 88, Parcel #304-91-554.  The URLA falsely represented that A.Gustavson earned $12,500.00 per month, had $121,202.00 in her bank account, and would provide a $102,361.10 down payment.  This URLA was submitted to Mesa Bank.

yy.   On or about November 8, 2006, STEVENS created, or caused to be created, the escrow receipt #1042695 for A.Gustavson's check #3426, which was payable to Capital Title Agency in the Amount of $104,072.24.  Check #3426 was supposed to be deposited into escrow for the purchase of Lot 88, Parcel #304-91-554.

zz.   Escrow receipt #1042695 was submitted to Mesa Bank on or about November 8, 2006, falsely evidencing evidence that A.Gustavson made a down payment at closing that was deposited into escrow.

17

aaa.   STEVENS submitted a letter to Mesa Bank, on or about November 8, 2006, falsely representing that: 1) All closing conditions/requirements have been met; and 2) All funds and documents needed for closing were in Capital Title Agency's possession.

**XXX10 North 140th Pl.**
**Scottsdale, Arizona**
**(Parcel 2, Parcel #219-36-109B)**

bbb.   In or around October, 2006, T.ALEXANDER, through Sea Rock, obtained ownership of Parcel 2, Parcel #219-36-109B (now identified as XXX10 North 140th Pl., Scottsdale, Arizona).

ccc.   On or about October 18, 2006, MASON appraised Parcel 2, Parcel #219-36-109B, and valued the property at approximately 1.3 million dollars with a completed home.

ddd.   On or about October 25, 2006, T.ALEXANDER created, or caused to be created, a Verification of Deposit for M.Truong.  The Verification of Deposit falsely represented that M.Truong had $153,824.00 in her Washington Mutual checking account.

eee.   In or around November, 2006, T.ALEXANDER created, or caused to be created, a URLA for Parcel 2, Parcel #219-36-109B.  The URLA falsely represented that M.Truong earned $13,075.00 per month, had $153,824.00 in her bank account, and would provide a $108,824.15 down payment.  This URLA was submitted to Mesa Bank.

fff.   On or about November 8, 2006, STEVENS created, or caused to be created, escrow receipt #1042696 for M.Truong's check #218, which was payable to Capital Title Agency in the Amount of $109,204.09.  Check #218 was supposed to be deposited into escrow for the purchase of Parcel 2, Parcel #219-36-109B.

ggg.   Escrow receipt #1042696 was submitted to Mesa Bank on or about November

18

8, 2006, falsely evidencing that M.Truong made a down payment at closing that was deposited into escrow.

hhh.   STEVENS submitted a letter to Mesa Bank, on or about November 8, 2006, falsely representing that: 1) All closing conditions/requirements have been met; and  2) All funds and documents needed for closing were in Capital Title Agency's possession.

**XXX87 East Stacey Road**
**Queen Creek, Arizona**
**(Lot 124, Parcel #304-92-177)**

iii.   In or around October, 2006, T.ALEXANDER, through Sea Rock, obtained ownership of Lot 124, Parcel #304-92-177 (now identified as XXX87 East Stacey Road, Queen Creek, Arizona).

jjj.   On or about October 30, 2006, T.ALEXANDER created, or caused to be created, a Verification of Deposit for MASON and his spouse.  The Verification of Deposit falsely represented that MASON and his spouse had $133,983.94 in their Bank of America checking account.

kkk.   In or around November, 2006, T.ALEXANDER created, or caused to be created, a URLA for Lot 124, Parcel #304-92-177.  The URLA falsely represented that MASON and his spouse earned $13,500.00 per month, had $133,983.00 in their bank accounts, and would provide a $104,236.38 down payment.  This URLA was submitted to Mesa Bank.

lll.   On or about November 10, 2006, STEVENS created, or caused to be created, escrow receipt #1042781 for MASON and his spouse's check #1276, which was payable to Capital Title Agency in the Amount of $106,703.88.  Check #1276 was supposed to be deposited into escrow for the purchase of Lot 124, parcel #304-92-177.

mmm.   Escrow receipt #1042781 was submitted to Mesa Bank on or about November 10, 2006, falsely evidencing that MASON and his spouse made a down

19

1    payment at closing that was deposited into escrow.

2    nnn.    STEVENS submitted a letter to Mesa Bank, on or about November 10, 2006,

3    falsely representing that: 1) All closing conditions/requirements have been met;

4    and  2) All funds and documents needed for closing were in Capital Title

5    Agency's possession.

**XXX12 East Red Bird Road**
**Scottsdale, Arizona**
**(Parcel 2, Parcel #219-37-421C)**

8    ooo.    In or around October, 2006, T.ALEXANDER, through Sea Rock, obtained

9    ownership of Parcel 2, Parcel #219-37-421C (Now identified as XXX12 East

10    Red Bird Road, Scottsdale, Arizona).

11    ppp.    On or about October 12, 2006, MASON appraised Parcel 2, Parcel #219-37-

12    421C, and valued the property at approximately 1.3 million dollars with a

13    completed home.

14    qqq.    On or about November 2, 2006, T.ALEXANDER created, or caused to be

15    created, a Verification of Deposit for S.Van.  The Verification of Deposit

16    falsely represented that S.Van had $207,179.77 in his JP Morgan checking

17    account.

18    rrr.    In or around November, 2006, T.ALEXANDER created, or caused to be

19    created, a URLA for Parcel 2, Parcel #219-37-421C.  The URLA falsely

20    represented that S.Van earned $19,500.00 per month, had $207,179.00 in his

21    bank account, and would provide a $108,558.55 down payment.  This URLA

22    was submitted to Mesa Bank.

23    sss.    On or about November 17, 2006, STEVENS created, or caused to be created,

24    escrow receipt #1042989 for S.Van's check #104, which was payable to

25    Capital Title Agency in the Amount of $108,517.64.  Check #104 was

26    supposed to be deposited into escrow for the purchase of Parcel 2, Parcel #219-

27    37-412C.

28

ttt.   Escrow receipt #1042989 was submitted to Mesa Bank on or about November 17, 2006, falsely evidencing that S.Van made a $108,517.64 down payment at closing that was deposited into escrow.

uuu.   STEVENS submitted a letter to Mesa Bank, on or about November 17, 2006, falsely representing that: 1) All closing conditions/requirements have been met; and 2) All funds and documents needed for closing are in Capital Title Agency's possession.

**XXX17 E. Country Meadows Dr.**
**Queen Creek, Arizona**
**(Lot 14, Parcel #304-90-674)**

vvv.   In or around August, 2006, T.ALEXANDER, through Sea Rock, obtained ownership of Lot 14, Parcel #304-90-674 (now identified as XXX17 E. Country Meadows Dr., Queen Creek, Arizona).

www.   On or about December 11, 2006, T.ALEXANDER created, or caused to be created, a Verification of Deposit for T.Nguyen. The Verification of Deposit falsely represented that T.Nguyen had $48,303.00 in her Bank of America checking account.

xxx.   On or about December 11, 2006, T.ALEXANDER created, or caused to be created, a Verification of Deposit for T.Nguyen. The Verification of Deposit falsely represented that T.Nguyen had $118,572.06 in her Desert Schools Federal Credit Union savings account.

yyy.   In or around December, 2006, T.ALEXANDER created, or caused to be created, a URLA for Lot 14, Parcel #304-90-674. The URLA falsely represented that T.Nguyen had earned $17,500.00 per month, had $166,875.00 in her bank account, and would provide a $103,102.30 down payment.

zzz.   On or about December 19, 2006, STEVENS created, or caused to be created, escrow receipt #1044040 for T.Nguyen's check #283, which was payable to Capital Title Agency in the amount of $102,949.28. Check #283 was supposed

1            to be deposited into escrow for the purchase of Lot 14, Parcel #304-90-674.

2    aaaa.    Escrow receipt #1044040 was submitted to Mesa Bank on or about December

3            19, 2006, falsely evidencing that T.Nguyen made a $102,949.28 down payment

4            at closing that was deposited into escrow.

5    bbbb.    STEVENS submitted a letter to Mesa Bank, on or about December 19, 2006,

6            falsely representing that: 1) All closing conditions/requirements have been met;

7            and  2) All funds and documents needed for closing were in Capital Title

8            Agency's possession.

9
10

**XXX50 South 195th Street**
**Queen Creek, Arizona**
**(Lot 6, Parcel #304-90-634)**

11    cccc.    In or around August, 2006, T.ALEXANDER, through Sea Rock, obtained

12            ownership of Lot 6, Parcel #304-90-634 (now identified as XXX50 South 195th

13            Street, Queen Creek, Arizona).

14    dddd.    On or about December 14, 2006, T.ALEXANDER created, or caused to be

15            created, a Verification of Deposit for A.Crisci.  The Verification of Deposit

16            falsely represented that A.Crisci had $164,464.88 in her Bank of America

17            accounts.

18    eeee.    On or about December 16, 2006, MASON appraised Lot 6, Parcel #304-90-

19            634, and concluded that it would be valued at approximately 1.3 million dollars

20            with a completed home.

21    ffff.    In or around December, 2006, T.ALEXANDER created, or caused to be

22            created, a URLA for Lot 6, Parcel #304-90-634.  The URLA falsely

23            represented that A.Crisci earned $16,189.00 per month, had $164,494.00 in her

24            bank accounts, and would provide a $109,554.20 down payment.  This URLA

25            was submitted to Mesa Bank.

26    gggg.    On or about December 26, 2006, STEVENS created, or caused to be created,

27            the escrow receipt #104419 for A.Crisci's check #5334, which was payable to

28

22

1               Capital Title Agency in the Amount of $115,059.65.  Check #5334 was

2               supposed to be deposited into escrow as the down payment for the purchase of

3               the Lot 6, Parcel #304-90-634.

4    hhhh.    Escrow receipt #104419 was submitted to Mesa Bank on or about December

5               26, 2006, falsely evidencing that A.Crisci made a down payment at closing that

6               was deposited into escrow.

7    iiii.    STEVENS submitted a letter to Mesa Bank, on or about December 20, 2006,

8               falsely representing that: 1) All closing conditions/requirements have been met;

9               and  2) All funds and documents needed for closing are in Capital Title

10              Agency's possession.

**XX43 N. 82nd Street**
**Mesa, Arizona**
**(Parcel 2, Parcel #219-23-005L)**

13    jjjj.    In or around August, 2006, T.ALEXANDER, through Sea Rock, obtained

14              ownership of Parcel 2, Parcel #219-23-005L (now identified as XX43 N. 82nd

15              Street, Mesa, Arizona).

16    kkkk.    On or about May 15, 2007, T.ALEXANDER created, or caused to be created, a

17              Verification of Deposit for D. and R. Kennedy.  The Verification of Deposit

18              falsely represented that D. and R. Kennedy had $387,902.12 in their Wells

19              Fargo Bank checking account.

20    llll.    In or around May, 2007, T.ALEXANDER created, or caused to be created, a

21              URLA for Parcel 2, Parcel #219-23-005L.  The URLA falsely represented that

22              D. and R. Kennedy earned $22,000.00 per month and had $383,707.00 in their

23              bank accounts.  The URLA was submitted to Mesa Bank.

24    mmmm.  STEVENS submitted a letter to Mesa Bank, on or about May 29, 2007, falsely

25              representing that: 1) All closing conditions/requirements have been met; and

26   ///

27   ///

28

2) All funds and documents needed for closing are in Capital Title Agency's possession.

All in violation of Title 18 United States Code, Section 371.

### COUNTS TWO THROUGH NINETEEN
### WIRE FRAUD
### and
### AIDING AND ABETTING
### (18 U.S.C. § 1343 & 2)

25.   The factual allegations in paragraphs 1 through 18 and 20 through 24 of the Indictment are incorporated by reference and re-alleged as though set forth fully herein.

26.   Beginning at a time unknown to the Grand Jury, but at least as early as in or around, August, 2005, and continuing to a date unknown to the Grand jury, but through at least in or around May, 2007, in the District of Arizona and elsewhere, defendants T.ALEXANDER, P.ALEXANDER, SHUMWAY, STEVENS, JOHNSON, MASON, and others known and unknown to the Grand Jury, using the business entities described above and others, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises.

27.   On or about the dates listed below, each date constituting a separate count, in the District of Arizona and elsewhere, for the purpose of executing said scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, defendants, T.ALEXANDER, P.ALEXANDER, SHUMWAY, STEVENS, JOHNSON, MASON, and others known and unknown to the Grand Jury, did knowingly cause funds from Mesa Bank, to be transmitted into the Heritage or Bridgeview bank accounts of Capital Title Agency, by means of wire, radio and television communications in interstate commerce, each such instance being a separate Count of this Indictment, as follows:

24

| Count | (On or About) Wire Date | Sender | Recipient City/State (Receiving Bank) | Item Sent |
|---|---|---|---|---|
| 2 | 8/16/05 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $428,231.00 for the purchase of Parcel #219-24-161 (now identified as XX11 N. 91st St., Mesa, Arizona). |
| 3 | 1/26/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $426,313.48 for the purchase of Lot 5, Parcel #219-33-011E (now identified as XX64 N. 92nd St., Mesa Arizona). |
| 4 | 1/26/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $426,900.20 for the purchase of Lot 3, Parcel #219-33-011E (now identified as XX40 N. 91st St., Mesa, Arizona). |
| 5 | 5/25/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $453,123.50 for the purchase of Lot 2A, Parcel #219-21-013 (now identified as XX17 N. 81st St., Mesa, Arizona). |
| 6 | 5/25/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $450,151.50 for the purchase of Lot 2B, Parcel #219-21-013 (now identified as XX09 N. 81st St., Mesa, Arizona). |
| 7 | 8/28/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $337,208.85 for the purchase of Lot 2, Parcel #219-36-002V (now identified as Parcel #219-36-186). |
| 8 | 8/28/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $341,328.90 for the purchase of Lot 1, Parcel #219-36-002V (now identified as XXX08 N. 139th Way, Scottsdale, Arizona). |
| 9 | 9/7/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $446,862.00 for the purchase of Lot 4, Parcel #219-33-011E (now identified as XX49 N. 91st Pl., Mesa, Arizona). |

25

| Count | (On or About) Wire Date | Sender | Recipient City/State (Receiving Bank) | Item Sent |
|---|---|---|---|---|
| **10** | 10/20/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $396,914.18 for the purchase of Lot 3, Parcel #104-10-009M (now identified as XX05 S. Via De Rico, Gold Canyon, Arizona). |
| **11** | 10/20/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $381,620.12 for the purchase of Lot 4, Parcel #104-10-009M (now identified as XX77 S. Via De Rico, Gold Canyon, Arizona). |
| **12** | 11/7/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $342,614.40 for the purchase of Lot 24, Parcel #304-90-652 (now identified as XXX15 S. 195th Street, Queen Creek, Arizona). |
| **13** | 11/8/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $349,043.40 for the purchase of Lot 88, Parcel #304-91-554 (now identified as XXX68 E. Orion Way, Queen Creek, Arizona). |
| **14** | 11/8/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $337,988.35 for the purchase of Parcel 2, Parcel 219-36-109B (now identified as XXX10 N. 140th Pl., Scottsdale, Arizona). |
| **15** | 11/13/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $346,582.00 for the purchase of Lot 124, Parcel #304-92-177 (now identified as XXX87 E. Stacey Road, Queen Creek, Arizona). |
| **16** | 11/17/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ (Heritage Bank) | Closing funds in the amount of $338,674.95 for the purchase of Parcel 2, Parcel #219-37-421C (now identified as XXX12 E. Red Bird Road, Scottsdale, Arizona). |

| Count | (On or About) Wire Date | Sender | Recipient City/State (Receiving Bank) | Item Sent |
|---|---|---|---|---|
| 17 | 12/19/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ<br><br>(Heritage Bank) | Closing funds in the amount of $374,828.20 for the purchase of Lot 14, Parcel 304-90-674 (now identified as XXX17 E. Country Meadows Dr., Queen Creek, Arizona). |
| 18 | 12/26/06 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ<br><br>(Heritage Bank) | Closing funds in the amount of $358,055.30 for the purchase of Lot 6, Parcel #304-90-634 (now identified as XXX50 S. 195th Street, Queen Creek, Arizona). |
| 19 | 5/29/2007 | Mesa Bank, Interstate Through FedWire | Capital Title Mesa, AZ<br><br>(Heritage Bank) | Closing funds in the amount of $508,152.26 for the purchase of Parcel 2, Parcel #219-23-005L (now identified as XX43 N. 82nd Street, Mesa, Arizona). |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS TWENTY THROUGH THIRTY-TWO
## TRANSACTIONAL MONEY LAUNDERING
### and
## AIDING AND ABETTING

### (Title 18 U.S.C. § 1957(a) & 2)

28.     The factual allegations in paragraphs 1 through 18, 20 through 24, 26 and 27 of the Indictment are incorporated by reference and re-alleged as though set forth fully herein.

29.     Beginning at a time unknown to the Grand Jury, but at least as early as in or around August, 2005, and continuing to a date unknown to the Grand Jury, but through at least in or around May, 2007, in the District of Arizona and elsewhere, defendants T.ALEXANDER, P.ALEXANDER, SHUMWAY, STEVENS, JOHNSON, and others known and unknown to the Grand Jury, individually and through the business entities described in paragraphs 13 through 18 above, knowingly engaged in monetary transactions as set forth below, in criminally-derived property of a value greater than $10,000.00, which was derived from a specified unlawful activity, namely a violation of 18 U.S.C. § 1343 (Wire Fraud), as alleged

27

in Counts 2-19 of this Indictment, each such instance being a separate Count of this
Indictment, as follows:

| Count | Date of Transaction (Financial Inst. Account No.) [Amount Wired, Withdrawn or Deposit] | Description of Transaction |
|---|---|---|
| 20 | 8/18/05 (JP Morgan Chase Bank, Account#XXXXXX8679) [$105,862.93, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Parcel 219-24-161 (now identified as XX11 N. 91st St., Mesa, Arizona) from Heritage Bank Account #XXXXXX5490 to T.Bassett. |
| 21 | 8/29/06 (JP Morgan Chase Bank Account #XXXXXX3121) [$60,102.54, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Lot 1, Parcel #219-36-002V (now identified as XXX08 N.139th Way, Scottsdale, Arizona) from Heritage Bank Account #XXXXXX5490 to ALEXANDER. |
| 22 | 8/29/06 (Western Security Bank Account #XXXXXX9029) [$117,382.00, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Lot 1, Parcel #219-36-002V (now identified as XXX08 N.139th Way, Scottsdale, Arizona) from Heritage Bank Account #XXXXXX5490 to Bullfrog Funding L.L.C.. |
| 23 | 9/7/06 (Commercial Capital Bank Account #XXXXXX2365) [$411,091.48, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Lot 4, Parcel #219-33-011E (now identified as XX49 N.91st Pl., Mesa, Arizona) from Heritage Bank Account #XXXXXX5490 to NAC 1031 Exchange Services. |
| 24 | 9/7/06 (JPMorgan Chase Bank Account #XXXXX3121) [$25,0000.00, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Lot 4, Parcel #219-33-011E (now identified as XX49 N. 91st Pl., Mesa, Arizona), from Heritage Bank Account #XXXXXX5490 to ALEXANDER. |
| 25 | 11/7/06 (JP Morgan Chase Bank Account #XXXXX3121) [$12,858.02, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Lot 24, Parcel #304-90-652 (now identified as XXX15 S. 195th, Queen Creek, Arizona) from Heritage Bank Account #XXXXXX5490 to ALEXANDER. |
| 26 | 11/8/06 (JPMorgan Chase Bank Account #XXXXX3121) [$29,215.62, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Parcel 2, Parcel #219-36-109B (now identified as XXX10 N. 140th Pl., Scottsdale, AZ), from Heritage Bank Account #XXXXXX5490 to ALEXANDER |

28

| Count | Date of Transaction (Financial Inst. Account No.) [Amount Wired, Withdrawn or Deposit] | Description of Transaction |
|---|---|---|
| 27 | 11/13/06 (JPMorgan Chase Bank Account #XXXXX3121) [$19,242.91, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Lot 88, Parcel #304-91-554 (now identified as XXX68 E. Orion Way, Queen Creek, AZ), from Heritage Bank Account #XXXXXX5490 to ALEXANDER. |
| 28 | 11/14/06 (JPMorgan Chase Bank Account #XXXXX3121) [$16,579.61, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Lot 124, Parcel #304-92-177 (now identified as XXX87 E. Stacey Rd., Queen Creek, AZ), from Heritage Bank Account #XXXXXX5490 to ALEXANDER. |
| 29 | 11/17/06 (JPMorgan Chase Bank Account #XXXXX3121) [$49,831.79, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Parcel 2, Parcel #219-37-421C (now identified as XXX12 E. Red Bird Rd, Scottsdale, AZ), from Heritage Bank Account #XXXXXX5490 to ALEXANDER. |
| 30 | 12/20/06 (JPMorgan Chase Bank Account #XXXXX3121) [$70,161.52, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Lot 14, Parcel #304-90-674 (now identified as XXX17 E. Country Meadows Dr., Queen Creek, AZ), from Heritage Bank Account #XXXXXX5490 to ALEXANDER. |
| 31 | 12/26/06 (JPMorgan Chase Bank Account #XXXXX3121) [$28,120.25, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Lot 6, Parcel #304-90-634 (now identified as XXX50 South 195th St., Queen Creek, AZ), from Heritage Bank Account #XXXXXX5490 to ALEXANDER. |
| 32 | 5/29/07 (JPMorgan Chase Bank Account #XXXXX3121) [$172,990.90, Wired In] | Wire transfer of a portion of the loan proceeds for the purchase of Parcel 2, Parcel #219-23-005L, (now identified as XX43 N. 82nd St., Mesa, AZ), from Heritage Bank Account #XXXXXX5490 to ALEXANDER. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS THIRTY-THREE THROUGH FORTY
## FALSE STATEMENTS TO FINANCIAL INSTITUTION
## and AIDING AND ABETTING

### (18 U.S.C. § 1014 and 2)

30.     The factual allegations in paragraphs 1 through 18, and 20 through 24 of the

Indictment are incorporated by reference and re-alleged as though set forth fully herein.

29

31.     On or about the dates set forth below, in the District of Arizona, defendants T.ALEXANDER, P.ALEXANDER, and SHUMWAY, did knowingly make and cause to be made materially false statements as described below to a lending institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, for the purpose of influencing said institution to approve a loan for a third-party borrower:

| Count | Date | Financial Institution | Activity |
|-------|------|----------------------|----------|
| 33 | 10/20/06 | Mesa Bank | ALEXANDER, or others acting at his direction, submitted to Mesa Bank a URLA in the name of L. and V. Hunter, which falsely represented that L. and V. Hunter earned $12,523.00 per month, had $194,459.00 in their financial accounts, and would provide a $90,810.33 down payment. ALEXANDER submitted this application knowing that these representations were false. |
| 34 | 10/20/06 | Mesa Bank | ALEXANDER, or others acting at his direction, submitted to Mesa Bank a URLA in the name of D. and S. Hunter, which falsely represented that D. and S. Hunter earned $12,860.94 per month and had $208,323.00 in their financial accounts. ALEXANDER submitted this application knowing that these representations were false. |
| 35 | 11/7/06 | Mesa Bank | ALEXANDER, or others acting at his direction, submitted to Mesa Bank a URLA in the name of J. Bodrero, which falsely represented that J. Bodrero earned $15,255.00 per month, had $183,433.00 in his financial accounts, and would provide a $96,342.88 down payment. ALEXANDER submitted this application knowing that these representations were false. |
| 36 | 11/7/06 | Mesa Bank | ALEXANDER, or others acting at his direction, submitted to Mesa Bank a URLA in the name of M.Truong, which falsely represented that M.Truong earned $13,075.00 per month, had $153,824.00 in her financial accounts, and would provide a $108,824.15 down payment. ALEXANDER submitted this application knowing that these representations were false. |

| Count | Date | Financial Institution | Activity |
|---|---|---|---|
| 37 | 11/8/06 | Mesa Bank | ALEXANDER, or others acting at his direction, submitted to Mesa Bank a URLA in the name of A.Gustavson, which falsely represented that A.Gustavson earned $12,500.00 per month, had $122,202.00 in her financial accounts, and would provide a $102,361.10 down payment. ALEXANDER submitted this application knowing that these representations were false. |
| 38 | 11/16/06 | Mesa Bank | ALEXANDER, or others acting at his direction, submitted to Mesa Bank a URLA in the name of S.Van, which falsely represented that S.Van earned $19,500.00 per month, had $207,179.00 in his financial accounts, and would provide a $108,558.55 down payment. ALEXANDER submitted this application knowing that these representations were false. |
| 39 | 12/18/06 | Mesa Bank | ALEXANDER, or others acting at his direction, submitted to Mesa Bank a URLA in the name of T.Nguyen, which falsely represented that T.Nguyen earned $17,500.00 per month, had $166,875.00 in his financial accounts, and would provide a $103,102.30 down payment. ALEXANDER submitted this application knowing that these representations were false. |
| 40 | 12/26/06 | Mesa Bank | ALEXANDER, or others acting at his direction, submitted to Mesa Bank a URLA in the name of A.Crisci, which falsely represented that A.Crisci earned $16,189.00 per month, had $182,946.00 in her financial accounts, and would provide a $109,554.20 down payment. ALEXANDER submitted this application knowing that these representations were false. |

All in violation of Title 18, United States Code, Sections 1014 and 2.

### COUNTS FORTY-ONE THROUGH FORTY-FIVE
### FALSE STATEMENTS TO FINANCIAL INSTITUTION
### and AIDING AND ABETTING

### (18 U.S.C. § 1014 and 2)

32.     The factual allegations in paragraphs 1 through 18 and 20 through 24, of the Indictment are incorporated by reference and re-alleged as though set forth fully herein.

33.     On or about the dates set forth below, in the District of Arizona, defendants,

31

JOHNSON and ALEXANDER, did knowingly make and cause to be made materially false statements as described below to a lending institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, for the purpose of influencing said institution to approve a loan for a third-party borrower:

| Count | Date | Financial Institution | Activity |
|-------|------|-----------------------|----------|
| **41** | 1/25/06 | Mesa Bank | JOHNSON and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #1032295, and other documents, which falsely represented that M. and B. Dana's check #5334, payable to Capital Title Agency in the amount of $126,013.44, was deposited into escrow and applied as a down payment. M. and B. Dana's check was never deposited into escrow. |
| **42** | 1/26/06 | Mesa Bank | JOHNSON and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #1032291, and other documents, which falsely represented that L. and D. Tawzer's check #127, payable to Capital Title Agency in the amount of $125,431.71, was deposited into escrow and applied as a down payment. L. and D. Tawzer's check was never deposited into escrow. |
| **43** | 5/23/06 | Mesa Bank | JOHNSON and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #1036921, and other documents, which falsely represented that K. and J. Moore's check #7682, payable to Capital Title Agency in the amount of $118,858.23, was deposited into escrow and applied as a down payment. K. and J. Moore's check was never deposited into escrow. |
| **44** | 5/24/06 | Mesa Bank | JOHNSON and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #1036922, and other documents, which falsely represented that STEVENS' check #3616, payable to Capital Title Agency in the amount of $119,981.37, was deposited into escrow and applied as a down payment. STEVENS' check was never deposited into escrow. |

| Count | Date | Financial Institution | Activity |
|-------|------|-----------------------|----------|
| 45 | 9/7/06 | Mesa Bank | JOHNSON and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #1040584, and other documents, which falsely represented that HARRIS's check #2533, payable to Capital Title Agency in the amount of $156,654.93, was deposited into escrow and applied as a down payment. HARRIS' check was never deposited into escrow. |

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNTS FORTY-SIX THROUGH FIFTY-ONE
## FALSE STATEMENTS TO FINANCIAL INSTITUTION
### and AIDING AND ABETTING

### (18 U.S.C. § 1014 and 2)

34.     The factual allegations in paragraphs 1 through 18 and 20 through 24 of the Indictment are incorporated by reference and re-alleged as though set forth fully herein.

35.     On or about the dates set forth below, in the District of Arizona, defendants, STEVENS and ALEXANDER, did knowingly make and cause to be made materially false statements as described below to a lending institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, for the purpose of influencing said institution to approve a loan for a third-party borrower:

| Count | Date | Financial Institution | Activity |
|-------|------|-----------------------|----------|
| 46 | 8/25/06 | Mesa Bank | STEVENS and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #1040197, and other documents, which falsely represented that P.ALEXANDER and his spouse's check #1027, payable to Capital Title Agency in the amount of $109,645.52, was deposited into escrow and applied as a down payment. P.ALEXANDER and his spouse's check was never deposited into escrow. |

33

| Count | Date | Financial Institution | Activity |
|-------|------|-----------------------|----------|
| **47** | 10/20/06 | Mesa Bank | STEVENS and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #1041947, and other documents, which falsely represented that L. and V. Hunter's check #1627, payable to Capital Title Agency in the amount of $90,112.61, was deposited into escrow and applied as a down payment. L. and V. Hunter's check was never deposited into escrow. |
| **48** | 10/20/06 | Mesa Bank | STEVENS and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #1041948, and other documents, which falsely represented that D. and S. Hunter's check #1043, payable to Capital Title Agency in the amount of $105,721.66, was deposited into escrow and applied as a down payment. D. and S. Hunter's check was never deposited into escrow. |
| **49** | 11/7/06 | Mesa Bank | STEVENS and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #1042642, and other documents, which falsely represented that J. and C. Bodrero's check #187, payable to Capital Title Agency in the amount of $110,817.29, was deposited into escrow and applied as a down payment. J. and C. Bodrero's check was never deposited into escrow. |
| **50** | 11/8/06 | Mesa Bank | STEVENS and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #1042695, and other documents, which falsely represented that A.Gustavson's check #3426, payable to Capital Title Agency in the amount of $104,072.24, was deposited into escrow and applied as a down payment. A.Gustavson's check was never deposited into escrow. |
| **51** | 12/26/06 | Mesa Bank | STEVENS and ALEXANDER, or others acting at their direction, submitted to Mesa Bank the escrow receipt #104419, and other documents, which falsely represented that A.Crisci's check #5334, payable to Capital Title Agency in the amount of $115,059.65, was deposited into escrow and applied as a down payment. A.Crisci's check was never deposited into escrow. |

All in violation of Title 18, United States Code, Sections 1014 and 2.

///

///

34

## COUNTS FIFTY-TWO THROUGH FIFTY-SIX
## FALSE STATEMENTS TO FINANCIAL INSTITUTION
## and AIDING AND ABETTING

### (18 U.S.C. § 1014 and 2)

36.     The factual allegations in paragraphs 1 through 17 and 19 through 23 of the Indictment are incorporated by reference and re-alleged as though set forth fully herein.

37.     On or about the dates set forth below, in the District of Arizona, defendants MASON and ALEXANDER, willfully overvalued land, property, or security, for the purpose of influencing the actions of a lending institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, in connection with a loan application for a third-party borrower:

| Count | Date | Financial Institution | Activity |
|-------|------|----------------------|----------|
| 52 | 8/7/06 | Mesa Bank | MASON drafted a real estate appraisal for Lot 2, Parcel #219-36-002V (Now identified as Parcel #219-36-186). MASON, acting at the direction of ALEXANDER, willfully overvalued Lot 2 by valuing the lot at 1.3 million dollars with a completed home. |
| 53 | 10/17/06 | Mesa Bank | MASON drafted a real estate appraisal for Lot 24, Parcel #304-90-652 (Now identified as XXX15 S. 195th Street). MASON, acting at the direction of ALEXANDER, willfully overvalued Lot 24 by valuing the lot at 1.3 million dollars with a completed home. |
| 54 | 10/17/06 | Mesa Bank | MASON drafted a real estate appraisal for Lot 88, Parcel #304-91-554 (Now identified as XXX68 E. Orion Way). MASON, acting at the direction of ALEXANDER, willfully overvalued Lot 88 by valuing the lot, with a completed home, at 1.3 million dollars. |
| 55 | 10/12/06 | Mesa Bank | MASON drafted a real estate appraisal for Parcel 2, Parcel #219-37-421C (Now identified as XXX12 E. Redbird Road). MASON, acting at the direction of ALEXANDER, willfully overvalued Parcel 2 by valuing the lot, with a completed home, at 1.3 million dollars. |

| Count | Date | Financial Institution | Activity |
|-------|------|----------------------|----------|
| 56 | 10/18/06 | Mesa Bank | MASON drafted a real estate appraisal for Parcel 2, Parcel 219-36-109B (Now identified as XXX10 N. 140th Pl.). MASON, acting at the direction of ALEXANDER, willfully overvalued Parcel 2 by valuing the lot, with a completed home, at 1.3 million dollars. |

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT FIFTY-SEVEN
## FALSE STATEMENTS TO FINANCIAL INSTITUTION
## and AIDING AND ABETTING

### (18 U.S.C. § 1014 and 2)

38.     The factual allegations in paragraphs 1 through 18, 20 through 24 of the Indictment are incorporated by reference and re-alleged as though set forth fully herein.

39.     On or about September 7, 2006, in the District of Arizona, defendants, HARRIS and ALEXANDER, did knowingly make and cause to be made materially false statements as described below to a lending institution, the accounts of which were insured by the Federal Deposit Insurance Corporation, for the purpose of influencing said institution to approve a loan for a third-party borrower:

| Count | Date | Financial Institution | Activity |
|-------|------|----------------------|----------|
| 57 | 9/7/06 | Mesa Bank | HARRIS created, or caused to be created, a Verification of Deposit that represented that he had $563,977.95 in two JP Morgan Chase bank accounts. The bank accounts, in fact, did not belong to HARRIS. HARRIS provided the Verification of Deposit to T.ALEXANDER so that it could be submitted to Mesa Bank in support of his loan application. T.ALEXANDER later submitted, or caused to be submitted, HARRIS' Verification of Deposit to Mesa Bank. |

All in violation of Title 18, United States Code, Sections 1014 and 2.

## FORFEITURE ALLEGATIONS

40.     The allegations contained in Count 1 of this Indictment are hereby realleged and

1 | incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United

2 | States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

3 | 41.      Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

4 | States Code, Section 2461(c), upon conviction of a conspiracy to violate Title 18 United

5 | States Code sections 1014 and/or 1343, in violation of Title 18, United States Code, Section

6 | 371, the defendants, T.ALEXANDER,  P.ALEXANDER, SHUMWAY, STEVENS,

7 | JOHNSON, and MASON, shall forfeit to the United States of America any property, real or

8 | personal, which constitutes or is derived from proceeds traceable to said violation. The

9 | property to be forfeited includes, but is not limited to, the following: a money judgment in the

10 | amount of no less than $1,000,000.00.

11 | 42.      The allegations contained in Counts 2 through 19 and 33 through 57 of this Indictment

12 | are hereby realleged and incorporated by reference for the purpose of alleging forfeitures

13 | pursuant to Title 18, United States Code, Section 982(a)(2)(A).

14 | 43.      Upon conviction of the offenses in violation of Title 18, United States Code, Sections

15 | 1343 and 1014 set forth in Counts 2 through 19 and 33 through 57 of this Indictment, the

16 | defendants, T.ALEXANDER, P.ALEXANDER, SHUMWAY, STEVENS, JOHNSON, and

17 | MASON, shall forfeit to the United States of America, pursuant to Title 18, United States

18 | Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained,

19 | directly or indirectly, as a result of such violations, including, but not limited to: a money

20 | judgment in the amount of no less than $1,000,000.00.

21 | 44.      The allegations contained in Counts 20 through 32 of this Indictment are hereby

22 | realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to

23 | Title 18, United States Code, Sections 982(a)(1).

24 | 45.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an

25 | offense in violation of Title 18, United States Code, Section 1957 , the defendants,

26 | T.ALEXANDER, P.ALEXANDER, SHUMWAY, STEVENS, and JOHNSON, shall forfeit

27 | to the United States of America any property, real or personal, involved in such offense, and

28 |

any property traceable to such property. The property to be forfeited includes, but is not

limited to, the following: a money judgment in the amount of no less than $1,000,000.00.

46.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18,

United States Code, Section 982(b) and Title 28, United States Code, Section 2461, the

defendants shall forfeit substitute property, up to the value of the forfeitable property, or any

portion thereof, if by any act or omission of the defendants, the forfeitable property cannot be

located upon the exercise of due diligence; has been transferred, sold to, or deposited with a

third party; has been placed beyond the jurisdiction of the court; has been substantially

diminished in value; or has been commingled with other property which cannot be divided

without difficulty.

All in accordance with Title 18, United States Code, Sections 981 and 982; Title 28

United States Code, Section 2461; and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/S/

FOREPERSON OF THE GRAND JURY
Date: June 15, 2010

DENNIS K. BURKE
United States Attorney
District of Arizona

/S/

Raymond K. Woo
Jennifer L. Levinson
Assistant U.S. Attorneys

38